# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLORADO

Civil Action No. _____

RICHARD BRANDT GREEN, M.D., an individual,

Plaintiff,

v.

U.S. ANESTHESIA PARTNERS OF COLORADO, INC., f/k/a GREATER COLORADO ANESTHESIA, P.C., a Colorado corporation, and
U.S. ANESTHESIA PARTNERS, INC., a Delaware corporation,

Defendants.

---

**COMPLAINT FOR REINSTATEMENT AND DAMAGES**

---

Plaintiff, Richard Brandt Green, M.D., by and through his undersigned counsel, respectfully submits his Complaint for Reinstatement and Damages against Defendants, U.S. Anesthesia Partners of Colorado, Inc. and U.S. Anesthesia Partners, Inc. (collectively, "Defendants"), and alleges and avers as follows:

**INTRODUCTION**

1. "Alcoholism is a disability about which stereotypic assumptions are particularly problematic. Alcoholics in particular suffer from the 'systematic prejudice, stereotypes, and neglect' that were the central concerns of the ADA. They are more likely to be discriminated

against because they are often not perceived to be suffering from a 'real' illness."[1]

2. Similar to attorneys and other professional occupations, physicians are more likely to encounter alcohol problems during their professional careers due to many factors, including the superior levels of responsibility, accountability and performance required of them to perform their jobs. However, physicians generally have a high rate of recovery from addiction due to their motivations to work on recovery because of the inherent risk of losing their license to practice medicine.

3. Dr. Green is one of those physicians who is motivated toward recovery. Although he has battled alcoholism for many years and first reported his diagnosis to his partners in 2008, Dr. Green never engaged in any behavior that put his patients' lives at risk or that resulted in misconduct while on the job. If he did, Dr. Green would not be filing this lawsuit.

4. Instead, in 2015, Dr. Green self-reported a relapse that occurred while he was on a vacation. This self-report caused an unfortunate chain of events that led to the temporary suspension of his medical license, immediate reinstatement of his license, loss of privileges at various facilities due to the temporary license suspension, subsequent reinstatement of privileges at some, but not all, facilities he previously worked, and ultimately, a demotion, loss of stock ownership, and lost compensation.

5. Dr. Green also suffers from Autism Spectrum Disorder, a diagnosis characterized by significant weakness or impairment in communication and social interaction. Dr. Green's loss

---

[1] *Rescue the Americans with Disabilities Act From Restrictive Interpretations: Alcoholism as an Illustration.* Judith J. Johnson, 27 N. ILL. U. L. REV. 169, 174-75 (2007).

of privileges and inability to regain all privileges he previously held has substantially increased the effect of his disorder on his ability to function and work.

6.      Defendant's failure and refusal to engage in the interactive process with Dr. Green and afford him a reasonable accommodation, as well as their unilateral decision to demote him, take back his stock and reduce his compensation is unlawful discrimination and a breach of the agreements between the parties.

**PARTIES**

7.      Plaintiff is a citizen and resident of the State of Colorado.

8.      Defendant U.S. Anesthesia Partners of Colorado, Inc. f/k/a Greater Colorado Anesthesia, P.C. ("USAP-Colorado") is a corporation organized under the laws of the State of Colorado and whose principal place of business is 8000 East Maplewood Avenue, Building 5, Greenwood Village, Colorado 80111.

9.      Defendant U.S. Anesthesia Partners, Inc. ("USAP") is a corporation organized under the laws of the State of Delaware and whose principal place of business is 450 East Las Olas Blvd., Suite 850, Fort Lauderdale, Florida 33301.[2]

**JURISDICTION AND VENUE**

10.     This Court has federal question jurisdiction pursuant to 28 U.S.C. § 1331 with respect to Plaintiff's claims arising under the Americans with Disabilities Act, 42 U.S.C. § 12101 *et seq.*, and Section 504 of the Rehabilitation Act of 1973, 29 U.S.C. § 701 *et seq.*  This Court

---

[2] From on or about July 5, 2016 until on or about February 7, 2017, USAP was registered with the Colorado Secretary of State as a Colorado corporation. Articles of Dissolution were filed in Colorado for reasons unknown on February 7, 2017.

also has supplemental jurisdiction over Plaintiff's state law claims pursuant to 28 U.S.C. § 1367.

11.     Venue is proper in the District of Colorado pursuant to 28 U.S.C. § 1391(b)(2) because a substantial part of the events or omissions giving rise to Plaintiff's claims occurred in this District.

**GENERAL ALLEGATIONS**

12.     Plaintiff is a board certified anesthesiologist who has been licensed and practicing medicine since 1992.

13.     Defendant USAP-Colorado is an organization of physicians in Colorado created by mergers between USAP, Greater Colorado Anesthesia ("GCA"), and South Denver Anesthesiologists ("SDA").

14.     USAP is a national network of anesthesia providers with over 3,500 clinical representatives located in Colorado, Florida, Maryland, Nevada, Oklahoma, Texas, and Washington.

15.     Plaintiff was a partner with GCA and its predecessor entities for many years and consistently worked up to 80-100 hours per week, took call and managed 24-hour in house trauma and obstetrics.

16.     On or about February 9, 2015, GCA merged with USAP.  At the time of the merger, Dr. Green's production was reported as the second highest source of annual revenue to the practice.

17.     Upon the merger, many of the practice's top performing physicians, including Dr. Green, received a retention bonus in addition to a cash payment and stock in exchange for

executing a 5-year Physician-Partner Employment Agreement.  A copy of Dr. Green's Physician-Partner Employment Agreement is attached and incorporated herein as ***Exhibit 1***.

18. During the merger discussions, USAP-Colorado and/or USAP created a "poverty line" analysis based on a physician's annual production revenue.  Physician-Partners who fell below the "poverty line" were not provided any retention bonuses, were transitioned to non-Partner positions and/or left the practice.  Nearly all of the Physician-Partners who were deemed to fall below the "poverty line" had disabilities, health conditions or were women with children.  Such behavior is indicative of a pattern and practice of discrimination by Defendants.

19. After the merger, Dr. Green went on vacation from March 26, 2015 to April 18, 2015, and suffered a relapse with respect to his alcoholism.

20. Dr. Green self-reported his relapse to his employer, USAP-Colorado, and he was granted a leave of absence to undergo treatment.

21. Unfortunately, effective November 16, 2015, the Colorado Medical Board summarily suspended Dr. Green's medical license due to his failure to abstain from alcohol as required by his previous agreements with the Colorado Physician Health Program ("CPHP").

22. Effective November 18, 2015, the Colorado Medical Board reinstated Dr. Green's medical license.

23. All of hospitals and facilities that Dr. Green held privileges at were notified of the reinstatement.  Notwithstanding, due to the brief license suspension, many hospitals and facilities required review of Dr. Green's circumstances before reinstating privileges.

24. On March 15, 2016, USAP-Colorado recognized Dr. Green's documented

sobriety and welcomed him back to the practice as a Physician-Partner. The letter reminded Dr. Green of Section 2.4(i) of the Employment Agreement, which requires that he "hold and maintain a valid and unrestricted license to practice medicine in the State of Colorado" in order to remain as a Physician-Partner. The letter also set forth the expectation that he "reapply for privileges at most, if not all the hospitals in which GCA provides anesthesia services" consistent with Section 2.4(ii) of the Employment Agreement.

25. Dr. Green continues to meet his licensure requirements, has maintained his program status, licensing and credentials, and has reapplied for privileges at all hospitals and facilities he previously worked.

26. In May 2016, Dr. Green was diagnosed Autism Spectrum Disorder, which condition negatively impacts his ability to communicate. As it pertains to Dr. Green's ability to advocate for himself when appearing before facility committees to seek reinstatement of his privileges, his Autism Spectrum Disorder has caused further delay and disruption to regaining his privileges at certain hospitals and facilities.

27. Dr. Green disclosed his diagnosis of Autism Spectrum Disorder to USAP-Colorado and requested assistance in seeking reinstatement of his privileges including appearances before facility committees, but USAP-Colorado has failed and refused to provide any assistance to Dr. Green in this regard.

28. Despite Dr. Green's compliance with all of the conditions and expectations outlined in his employer's March 15 letter, USAP-Colorado nonetheless demoted Dr. Green from Physician-Partner effective August 5, 2016, claiming that he has "not been able to follow the

requirements of 2.4(ii) with additional Facilities." A copy of USAP-Colorado's letter dated August 1, 2016 is attached and incorporated herein as ***Exhibit 2***.

29. Section 2.4 of the Physician-Partner Agreement provides:

2.4 <u>Licensure, Compliance with Laws, Standards</u>. As a continuing condition precedent to the obligations of GCA under this Agreement, Physician covenants that all times during the Term, Physician shall (i) hold and maintain a valid and unrestricted license to practice medicine in the State of Colorado (including an "Office Based Anesthesia" permit if required by the Clinical Governance Board), including satisfaction of any and all continuing medical education requirements; <u>(ii) successfully apply for and maintain in good standing provisional or active medical staff privileges at the Facility or Facilities to which Physician is assigned by GCA;</u> (iii) maintain certification by any board or regulatory agency required by any Facility at which Physician practices; and (iv) comply with and otherwise provide professional services in accordance with applicable law, the ethical standards of the American Medical GCAs and Colorado Medical Board, the standards and recommendations of the Joint Commission and of any accrediting bodies that may have jurisdiction or authority over Physician's medical practice or the Facilities, GCA's corporate Bylaws, the Medical Staff Bylaws, the rules and regulations and the policies and procedures of GCA and Facilities, as each may be in effect from time to time, and the standard of care in the medical community in which GCA and the Facilities are located. Physician will notify GCA immediately, but in any event within forty-eight (48) hours of Physician's knowledge thereof, if any of the foregoing shall become, in any manner, untrue.

*See* ***Ex. 1***, p. 4 (emphasis added).

30. As set forth above, Section 2.4(ii) of the Employment Agreement expressly states that a Physician-Partner need only maintain medical staff privileges at "<u>the Facility or Facilities to which Physician is assigned</u>." *Id.* (emphasis added).

31. Indeed, USAP-Colorado has employed and currently employs Physician-Partners that do not maintain privileges at all facilities.

32. To date, USAP-Colorado has failed and refused to provide a reasonable

identification to Dr. Green of the facilities "to which [he] is assigned" and why USAP-Colorado reached the determination that he has not met Section 2.4(ii) of the Employment Agreement.

33. USAP-Colorado notified Dr. Green that his Physician-Partner Employment Agreement was terminated and all of his Common Stock forfeited, but told him that he could continue his employment in an unidentified "alternate position." *See* **Ex. 2**.

34. Despite Dr. Green's repeated requests, USAP-Colorado has failed and refused to identify what termination provision in the Physician-Partner Agreement it exercised in order to terminate the Agreement and cause the forfeiture of all his stock.

35. Dr. Green continues to work for USAP-Colorado in some sort of "alternate" capacity and continues to perform at a high production and revenue rate.

36. Dr. Green continues to try to engage USAP-Colorado to seek his reinstatement to Physician-Partner and the return of his stock and to seek reinstatement of his privileges at all facilities. Despite Dr. Green's repeated requests, however, USAP-Colorado has failed and refused to engage in the interactive process, to assist him in advocating for his rights before facility committees and/or to reinstate him as Physician-Partner with a reasonable accommodation of allowing him to be "assigned" to the facilities where he does maintain privileges.

37. USAP-Colorado also recently has claimed that because Dr. Green does not have privileges at certain facilities, he cannot take the call that is required by all Physician-Partners. However, to the contrary, USAP-Colorado has employed and currently employs Physician-Partners who are not scheduled to take call or who do not actually take call through giving up

their call shifts.

38. Upon information and belief, USAP-Colorado's claimed reasons that Dr. Green does not maintain privileges at all facilities and/or cannot take call as is required by all Physician-Partners is a pretext for discrimination against Dr. Green due to his alcoholism and/or Autism Spectrum Disorder.

39. On May 30, 2017, Dr. Green filed a Charge of Discrimination with the Colorado Civil Rights Division ("CCRD") and Equal Employment Opportunity Commission ("EEOC") alleging disability discrimination and retaliation based on his alcoholism and Autism Spectrum Disorder.

40. On May 29, 2018, the EEOC issued Dr. Green a Right to Sue Notice.

41. This lawsuit now follows, and is timely filed.

## CLAIMS FOR RELIEF

### FIRST CLAIM FOR RELIEF
(Disability Discrimination in Violation of the
Americans with Disabilities Act and the Colorado Anti-Discrimination Act)

42. Dr. Green incorporates by reference herein the allegations contained in paragraphs 1 through 41 above.

43. The ADA and CADA expressly prohibit discrimination in employment on the basis of disability. *See* 42 U.S.C. § 12101 *et seq.*, C.R.S. 24-34-501 *et seq.* Dr. Green advised his employer of his disabilities and thereafter was demoted effective August 5, 2016.

44. Dr. Green has suffered a loss of compensation and benefits since August 5, 2016.

45. Dr. Green has been treated differently than other Physician-Partners who do not suffer from a disability and/or who do not suffer from the same disabilities as him.

46. Dr. Green has been treated differently than other Physician-Partners who do not take call and/or who do not maintain privileges at all facilities.

47. Dr. Green has been denied a reasonable accommodation of not being scheduled for call and/or not being scheduled for full-time hours at the facilities where he currently maintains privileges.

48. USAP-Colorado has refused to engage in the interactive process with Dr. Green in good faith to discuss possible reasonable accommodations, despite it regarding Dr. Green as disabled and previously accommodating his alcoholism by allowing him to enter treatment.

49. Dr. Green has been damaged in an amount to be proven at trial.

**SECOND CLAIM FOR RELIEF**
**(Disability Discrimination in Violation of Section 504 of the Rehabilitation Act of 1973)**

50. Dr. Green incorporates by reference herein the allegations contained in paragraphs 1 through 49 above.

51. Section 504 of the Rehabilitation Act provides, in pertinent part, that "[n]o otherwise qualified individual with a disability ... shall, solely by reason of her or his disability, be excluded from the participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance...." 29 U.S.C. § 794(a).

52. Defendants receive federal funds, such as Medicare.

53. Dr. Green has suffered a loss of compensation and benefits since August 5, 2016.

54. Dr. Green has been treated differently than other Physician-Partners who do not suffer from a disability and/or who do not suffer from the same disabilities as him.

55. Dr. Green has been treated differently than other Physician-Partners who do not take call and/or who do not maintain privileges at all facilities.

56. Dr. Green has been denied a reasonable accommodation of not being scheduled for call and/or not being scheduled for full-time hours at the facilities where he currently maintains privileges.

57. USAP-Colorado has refused to engage in the interactive process with Dr. Green in good faith to discuss possible reasonable accommodations, despite it regarding Dr. Green as disabled and previously accommodating his alcoholism by allowing him to enter treatment.

58. Dr. Green has been damaged by Defendants in an amount to be proven at trial.

**THIRD CLAIM FOR RELIEF**
**(Breach of Contract, Including the Implied Covenant of Good Faith and Fair Dealing)**

59. Dr. Green incorporates by reference herein the allegations contained in paragraphs 1 through 58 above.

60. Dr. Green executed a Physician Partner Employment Agreement with USAP-Colorado. *See **Ex. 1***.

61. By unilaterally demoting Dr. Green to an unidentified "alternate" position, reducing Dr. Green's compensation, and deeming Dr. Green's stock to be forfetied, Defendants have and continue to breach their contract with Dr. Green, including the implied covenant of good faith and fair dealing.

62. By failing and refusing to identify the provision supporting Defendants' termination of the Physician Partner Employment Agreement, Defendants have and continue to breach their contract with Dr. Green, including the implied covenant of good faith and fair dealing.

63. Among other terms, the Physician Partner Employment Agreement provides for the application of Colorado law and the recovery of the prevailing party's legal expenses, including without limitation, reasonable attorneys' fees, costs and necessary disbursements, in any action to enforce or seek a declaration of the parties' rights under any provision of the agreement.

64. Defendants breaches have caused Dr. Green to suffer damages in an amount to be proven at trial. Monetary damages alone cannot fully compensate Dr. Green and Dr. Green is entitled to reinstatement to his prior position of Physician-Partner retroactive to August 5, 2016.

WHEREFORE, Plaintiff Richard Brandt Green, M.D. respectfully requests that this Court enter judgment in his favor and against Defendants and award the following relief:

    a. Declaratory relief, including but not limited to a declaration that the Americans with Disabilities Act, the Colorado Anti-Discrimination Act, and the Rehabilitation Act bar Defendants from demoting individuals who have disabilities without first engaging in the interactive process to determine whether an individual can perform the essential functions of the job (with or without a reasonable accommodation);

    b. Appropriate injunctive relief, including but not limited to reinstatement of Dr. Green's position as Physician-Partner with USAP-Colorado;

      c.      Back pay in an amount to be determined at trial;

      d.      In the event reinstatement is not granted, front pay;

      e.      Compensatory and consequential damages, including for emotional distress;

      f.      Punitive damages;

      g.      Pre-judgment and post-judgment interest at the highest lawful rate;

      h.      Attorneys' fees and costs of this action; and

      i.      Any such further relief as the Court deems appropriate.

**Plaintiff hereby demands a jury trial.**

Respectfully submitted this 27th day of August, 2018.

GOKENBACH LAW, LLC

*s/ Jennifer L. Gokenbach*
Jennifer L. Gokenbach
Industry Commercial Building
3001 Brighton Blvd., Suite 2660
Denver, Colorado 80216
Tel: 866.578.6223
Fax: 303.990.8131
jennifer@gokenbachlaw.com
*Attorney for Plaintiff*

Plaintiff's Address:
11245 E. Parker Road
Parker, Colorado 80138